# 24-1884-CV

## United States Court of Appeals
### *for the*
## Second Circuit

———————————◆———————————

NEUROLOGICAL SURGERY PRACTICE OF LONG ISLAND, PLLC,

*Plaintiff-Appellant,*

— v. —

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
UNITED STATES DEPARTMENT OF THE TREASURY, UNITED STATES
DEPARTMENT OF LABOR, XAVIER BECERRA, DBA Xavier Becerra, in his
official capacity as Secretary, United States Department of Health and Human
Services, JANET LOUISE YELLEN, in her official capacity as Secretary, United
States Department of the Treasury, JULIE A. SU, Acting Secretary of Labor, her
official capacity as Acting Secretary, United States Department of Labor,

*Defendants-Appellees.*

———————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

ROY W. BREITENBACH
LISA ANNE LECOURS
MEGAN KNEPKA
HARRIS BEACH MURTHA
  CULLINA PLLC
*Attorneys for Plaintiff-Appellant*
The Omni
333 Earle Ovington Boulevard,
  Suite 901
Uniondale, New York 11553
(516) 880-8484

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ........................................................................................................3

    I.    As Defendants Effectively Concede, the District Court Erroneously Dismissed the Claims that Plaintiff Pursues on Appeal on Mootness Grounds When They Continue to Present a Live Controversy ...................................................................3

    II.    The Dismissal of Plaintiff's Causes of Action Arising from Non-Compliance with Statutory Requirements Was Erroneous...................................................................................5

    III.    The Dismissal of Plaintiff's Claim that Defendants Violated the Congressional Mandate to Certify Sufficient IDR Entities Was Erroneous .................................................................13

    IV.    The Court Erroneously Held that It Could Not Require Defendants to Provide Clarifying Guidance .......................................17

CONCLUSION ...................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alabama v. Bozeman*,
533 U.S. 146 (2001)................................................................14

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979)................................................................15

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992)..................................................................4

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000)................................................................4

*Darby v. Cisneros*,
509 U.S. 137 (1993)...............................................................15

*FEC v. Ted Cruz for Senate*,
596 U.S. 289 (2022)................................................................6

*Federal Drug Administration v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024).............................................................6, 7

*Forest Guardians v. Babbitt*,
174 F.3d 1178 (10th Cir. 1999) ...................................................11

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000)................................................................4

*Heckler v. Chaney*,
470 U.S. 821 (1985)......................................................... 8, 9, 11

*Iowaska Church of Healing v. Werfel*,
105 F.4th 402 (D.C. Cir. 2024)....................................................13

*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973)................................................................9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)......................................................5-6, 7, 10

*McCarthy v. S.E.C.*,
406 F.3d 179 (2d Cir. 2005) ......................................................12

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004)....................................................................... 15, 16

*Texas Medical Association v.*
    *United States Department of Health and Human Services*,
    110 F.4th 762 (5th Cir. 2004) ......................................................10

*United States v. Concentrated Phosphate Export Assn.*,
    393 U.S. 199 (1968)......................................................................4

*United States v. Texas*,
    599 U.S. 670 (2023).......................................................................9

*Vermont Yankee Nuclear Power Corp. v.*
    *Natural Resources Defense Council, Inc.,*
    435 U.S. 519 (1978)....................................................................15

**Statutes & Other Authorities:**

5 U.S.C. § 702 ....................................................................................8, 17

5 U.S.C. § 704 .......................................................................................8

5 U.S.C. § 706 .....................................................................................15

5 U.S.C. § 706(1) ........................................................................... 11, 15

42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II) ...........................................10

42 U.S.C. § 300gg-111(b)(1)(D) ........................................................10

42 U.S.C. § 300gg-111(c)(4)(A) .....................................................1, 14

42 U.S.C. § 300gg-111(c)(4)(E) .....................................................1, 14

42 U.S.C. § 300gg-111(c)(6) .............................................................10

## PRELIMINARY STATEMENT

Plaintiff-Appellant, Neurological Surgery Practice of Long Island, PLLC ("Plaintiff"), is a private medical practice subject to the "No Surprises Act" ("NSA"), which prohibits out-of-network health care providers from billing patients for services provided while (purportedly) giving providers the right to secure payment from the patients' group health plans via a negotiation and independent dispute resolution ("IDR") arbitration process implemented and administered by Defendants United States Department of Health and Human Services, Department of the Treasury, Department of Labor, and high-level officials of those agencies ("Defendants" or "Departments"). Although Defendants are charged under the legislation with implementing and administering the NSA in the specific manner directed by Congress, they have failed to administer a functioning process. The NSA directs that defendants "shall" certify a sufficient number of IDR entities "to ensure the timely and efficient provision" of IDR determinations, 42 U.S.C. § 300gg-111(c)(4)(A) and (E), but Defendants do not dispute that, by their own metrics, they have failed to certify anywhere near the number of IDR entities needed to timely and efficiently process the amount of disputes submitted. In addition, the NSA creates obligatory time frames for administration of claims and reimbursement, but Defendants have taken no action to enforce compliance with NSA timeframes by group health plans and IDR entities nor, after posting inaccurate guidance

1

concerning claim eligibility on their website, have Defendants taken the basic step of posting clarifying guidance (despite telling the District Court they would).

In their responding brief, Defendants do not contradict any of these particular failures, or dispute that the implementation of the NSA has been deeply flawed. Instead, they assert that the Court properly dismissed the amended complaint as moot as to a claim Plaintiff no longer presses and, implicitly recognizing that the claims pursued on appeal are not moot (as the District Court erroneously concluded), Defendants argue those claims were properly dismissed either because Plaintiff lacks standing or the Court lacks the authority to grant the relief requested by Plaintiff. Defendants are mistaken on both counts as Plaintiff has sufficiently stated cognizable claims for relief.

The chronic failure of IDR entities to meet the mandatory time requirements in the NSA for issuing a decision is administrative action chargeable to the Departments, which have the coercive power to take steps to address it. Congress imposed the statutory obligation to "ensure" that there are a sufficient number of IDR entities to process claims directly on Defendants and the Court may compel Defendants to fulfill that mandate. Indeed, Defendants acknowledge that they have not fulfilled the requirement, listing a series of excuses that they may assert as defenses on the merits but that are not grounds for dismissal. Finally, where Defendants have effectively conceded the validity of Plaintiff's challenge to sub

2

regulatory guidance that misstated claims eligibility criteria, indicating they would correct the error by issuing updated guidance but failed to do so, resulting in incomplete relief to Plaintiffs, this Court has authority to direct Defendants to correct the error.

For these reasons, this Court should vacate the District Court's judgment, deny the motion to dismiss, and remand for consideration of Plaintiff's motion for a preliminary injunction.

## **ARGUMENT**

### I.   **As Defendants Effectively Concede, the District Court Erroneously Dismissed the Claims that Plaintiff Pursues on Appeal on Mootness Grounds When They Continue to Present a Live Controversy.**

Defendants contend that the District Court properly dismissed Plaintiff's challenge to the pause of the IDR process as moot – but Plaintiffs do not challenge the pause in their brief in this Court.  As to the claims that are asserted on appeal, Defendants do not seriously dispute that the District Court's mootness determination, as they put it, "swept too broadly" (Resp Brf. 17).  The District Court dismissed the amended complaint as moot based solely and erroneously on the fact that, after a lengthy pause in the processing of IDR requests, the IDR portal was reopened.  Defendants essentially acknowledge that this was error as they do not defend the dismissal of the claims argued on appeal on mootness grounds, but instead press other arguments.

3

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome . . . and it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *City of Erie v Pap's A.M.*, 529 U.S. 277, 287 (2000) (cleaned up). It is Defendants' "heavy burden" to show that an event has occurred that makes it impossible for the court to grant any effectual relief to a prevailing party, *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992), or that wrongful behavior has ceased and "could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000); *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968). As Defendants now appear to concede, the reopening of the portal in no way mooted Defendants' challenges to administrative deficiencies that were neither impacted nor corrected by reopening of the portal and that continue to harm Plaintiff, including failure to address the rampant noncompliance by health insurance plans and IDR entities with mandatory time requirements set by Congress, Defendants failure to ensure the certification of sufficient IDR entities, and their failure to correct the harm caused by inaccurate interpretive guidance. Because Defendants have clearly failed to meet their heavy burden of establishing mootness, with respect to the claims pursued on appeal, the District Court's dismissal on mootness grounds should be vacated.

4

## II.    The Dismissal of Plaintiff's Causes of Action Arising from Non-Compliance with Statutory Requirements Was Erroneous.

Defendants argue that Plaintiff lacks standing to bring its claims to compel compliance with Defendants' statutory deadlines.  Notably, the District Court did not dismiss the second amended complaint on standing grounds, addressing only mootness and the "merits," i.e., whether cognizable claims were stated under the APA and the All Writs Act.  To the extent the District Court's order dismissing the prior complaint for lack of standing is pertinent here, that lack of standing rationale was limited to the conclusion that redressability was lacking with respect to certain "enforcement" claims (SPA 5-7).   Defendants now assert, in conclusory fashion, that Plaintiffs lack standing to pursue any of their claims due to both the absence of "causation" and lack of "redressability as plaintiff has not explained what actions it believes the Departments have the authority and resources to take that would ensure that IDR entities and insurers meet these deadlines" (Resp Brf. 18-19).  Defendants cite no authority for the proposition that, to establish standing, Plaintiff must address the resources of the Department or detail how the agency is to fulfill the directive to enforce statutory requirements.

In any event, standing requires that (1) the plaintiff have suffered an "injury in fact"; (2) there is a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to speculative, that "the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S.

5

555, 560-61 (1992). In determining standing, the court must "accept as valid the merits of [plaintiff's] legal claims." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 298 (2022). Defendants do not explain the basis for their causation challenge, which appears to mirror their redressability argument – that the "injuries are caused by insurers and IDR entities, not by the Departments" (Resp Brf. 18). The causation argument was properly rejected by the District Court in its order dismissing the original complaint: "Defendants contend that plaintiffs have been harmed not by any conduct on the part of the agencies but by the failure of IDR entities and health care plans to comply with statutory directives. But indirect injury is not fatal to standing so long as plaintiff demonstrates a causal nexus between the alleged injuries and the defendants' conduct – and plaintiff has made that showing here" (SPA-8).

Defendants' reliance on *Federal Drug Administration v. Alliance for Hippocratic Medicine* (602 U.S. 367 [2024]) in support of their causation argument is misplaced. In that case pro-life physicians challenged the FDA's decision not to enforce its own regulations requiring that the drug mifepristone be prescribed and dispensed in person, asserting this lack of enforcement would cause them downstream injuries because the FDA's action would cause more pregnant women to suffer complications from mifepristone, necessitating more emergency abortions by doctors which could compel plaintiffs to render such care against their consciences, or to divert resources and time from other patients to treat mifepristone

6

patients. The Supreme Court concluded these injuries were too attenuated to establish causation. In so holding, the Court made a distinction between regulated plaintiffs and unregulated plaintiffs, noting that when plaintiff is an unregulated party, "standing is not precluded but it is ordinarily substantially more difficult to establish. *Id.* at 382, *quoting Lujan*, 504 US at 562. The Court further explained that, in that event, causation "ordinarily hinge[s] on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well" (*Id.*, at 383) and plaintiff must show that the regulated third parties "will likely react in predictable ways that in turn will likely injure the plaintiff." *Id.*

Here, Plaintiff is not an unregulated party – it is regulated under the same scheme as health insurance plans and, to the extent deemed third parties, IDR entities. As such, the chain of causation resulting from Defendants' failure to regulate the other actors in the same regulatory regime is much stronger than would be the case with unregulated plaintiffs. But even if it was unregulated, Plaintiff here would meet the standard identified by Supreme Court as the lack of enforcement causes the so-called regulated third parties – health insurance plans and IDR entities – to react in clearly predictable ways (they fail to comply with strict time requirements with impunity) which harms Plaintiff by postponing (in some cases indefinitely) disposition of IDR claims and payment of compensation for services

performed. Defendants failed to establish a lack of causation as a basis for denial of standing, as the District Court concluded. For these reasons, Defendants undeveloped and conclusory causation argument lacks merit.

Turning to the so-called enforcement claims, the District Court's conclusion that the claims were not redressable was erroneous for the reasons explained in the main brief (App Brf. 27-33). Although Defendants argue otherwise, the requirement that Defendants administer the IDR process under mandatory time frames set forth in the NSA is not the type of "enforcement" action that is unreviewable.

Under the APA, "[a]ny person 'adversely affected or aggrieved' by agency action; *see* § 702, including a 'failure to act,' is entitled to 'judicial review thereof,' as long as the action is a 'final agency action for which there is no other adequate remedy in a court,' *see* § 704," as long as, relevant here, the action or inaction is not "committed to agency discretion by law." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Plaintiff acknowledges that in many circumstances an agency decision not to take enforcement action may be unreviewable, but this is not the type of "enforcement" action that is presumptively unreviewable under *Chaney* and its progeny because the challenged agency action does not involve decisions relating to initiation of civil or criminal investigative or enforcement proceedings that involve balancing discretionary factors. *Id.* at 831-32.

Defendants have no answer to this argument but merely cite cases similar to *Chaney* where a nonregulated plaintiff sued to compel an agency to initiate a criminal or civil enforcement action against a third-party. *See United States v. Texas*, 599 U.S. 670, 677 (2023) (States sought to compel federal agencies to enforce statutes requiring arrest of certain noncitizens, including those released from state prison after criminal convictions); *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973). (Mother of child sought to compel District Attorney to initiate criminal prosecution of child's father for nonpayment of child support). Defendants do not address Plaintiff's argument that the enforcement cases on which the District Court relied are distinguishable from the scenario here where Plaintiff is not an unregulated party and does not seek enforcement against entities that can reasonably be viewed as third parties under the NSA scheme. Moreover, even if *Chaney* and its progeny apply here, Defendants neither dispute that the exception exists nor rebut Plaintiff's argument that the scenario presented here falls within it.

As explained in Plaintiff's main brief, the presumption of unreviewability may be rebutted where the statute has provided guidelines for the agency to follow in exercising its enforcement powers. *Chaney*, 470 U.S. at 833. If Congress has indicated an intent to circumscribe agency enforcement discretion, and has provided limits to that discretion, the failure to follow the law is reviewable. *Id*. at 834–35.

9

Here, Defendants are administering an adjudicative process that supplanted traditional claim recovery and dispute resolution processes that were available to providers before its enactment, and IDR entities function as agents of the Departments who perform administrative adjudication. *See* 42 U.S.C. §§ 300gg-111(a)(1)(C)(iv)(II), 300gg-111(b)(1)(D). IDR entities are not wholly independent but are subject to the administrative authority of Defendants, as the Fifth Circuit concluded in *Texas Medical Association v. United States Department of Health and Human* Services, 110 F.4th 762, 774 (5th Cir. 2004) (rejecting Departments' argument that IDR entities independence rendered their decisions "independent action of some third party not before the court" within the meaning of *Lujan*). The IDR entities are subject to the mandatory time frames for claim resolution and payment (which require action not later than 30 days after the date of selection of the certified IDR entity or the making of a determination, respectively). 42 U.S.C. § 300gg-111(c)(6). IDR entities are chronically ignoring that deadline. Likewise, health care plans, which are regulated entities within Defendants' enforcement authority under the NSA, are failing to timely pay claims adjudicated in the providers' favor.

Defendants have not been granted discretion under the statutory scheme to alter or ignore the statutory deadlines imposed by Congress. The NSA required the Departments to administer the IDR process under the mandatory time frames set

10

forth in the statute. The time requirements can be enforced without any need for Defendants to exercise the type of prosecutorial discretion discussed in *Chaney*, which encompassed resolution of complicated questions concerning whether a statute has been violated or whether a conviction could be obtained. Whether health care providers or IDR entities are acting pursuant to the statutory time frames in the NSA is readily discernible based on objective facts and no separate proceedings would need to be initiated for Defendants to command compliance. The chronic failure of IDR entities to meet the mandatory time requirements is administrative action chargeable to Defendants, which have the power to take steps to address it including, among other things, through decertification. Defendants could act in a myriad of ways to incentivize timely performance or penalize late performance. But Defendants do not have the delegated authority to alter or ignore the mandatory time requirements. "Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers." *Chaney*, 470 U.S. at 833. When an agency fails to meet statutory deadlines, the court may compel compliance therewith, *see Forest Guardians v. Babbitt*, 174 F.3d 1178, 1191 (10th Cir. 1999); 5 U.S.C. § 706(1), so that providers may be timely reimbursed.

Defendants claim that Plaintiff does not challenge the District Court's merits analysis, which was addressed on reconsideration of its order dismissing the complaint (SPA 26-28), arguing that Plaintiff has not developed its APA arguments.

11

But the merits argument to which Defendants refer is an inquiry as to whether Plaintiff has alleged cognizable claims for relief sufficient to withstand Defendants' motion to dismiss. Plaintiff was not required to *prove* its claims and there is significant overlap between the standing issues and the allegations necessary to state cognizable causes of action. In the opening brief, Plaintiff clearly explained not only why it has standing to challenge Defendants' failure to compel compliance with statutory deadlines but that it stated a cognizable claim that Defendants unlawfully withheld action under the APA. Likewise, Plaintiff explained why it stated cognizable claims arising from Defendants' failure to certify sufficient IDR entities and to adequately correct the injury caused by its faulty interpretive guidance.

Defendants' argument that the viability of Plaintiff's procedural due process claim may not be considered on appeal because Plaintiff "does not attempt to revive those claims on appeal" (Resp Brf. 19) lacks merit. Plaintiff did reassert the viability of its procedural due process claim in its main brief (Resp Brf. 33-34), alleging that it had a cognizable property interest in reimbursement of services rendered at the request of a patient pursuant to state law, protected against unlawful federal interference under the due process clause, a right violated by Defendants' noncompliance with procedural rights granted in the NSA.[1] Plaintiff's procedural

---

[1] The cases on which Defendants rely to suggest that Plaintiff forfeited the argument are distinguishable. In *McCarthy v S.E.C.*, 406 F.3d 179 (2d Cir 2005) the petitioner failed to challenge the SEC's determination that he engaged in discretionary trading in his main brief and

due process claim is a corollary to Plaintiff's specific claims of noncompliance with procedural rights granted in the NSA (*see* Second Amended Complaint, R. 28-31), specifically the right to prompt adjudication and payment of claims implicated by both the failures to enforce compliance with mandatory statutory time-frames and to certify a sufficient number of IDR entities.

### III. The Dismissal of Plaintiff's Claim that Defendants Violated the Congressional Mandate to Certify Sufficient IDR Entities Was Erroneous.

Defendants appear to have abandoned any claim that Plaintiff lacks standing to challenge Defendants' failure to certify a sufficient number of IDR entities as no such argument is asserted in their brief. On the merits, Plaintiff stated a cognizable claim for relief. Defendants argue that the District Court "was correct in refusing to grant relief" (Resp Brf. 20) on such claim but the question before the Court on Defendants' motion to dismiss was whether Plaintiff stated a cognizable claim – not whether Plaintiff was entitled to relief. Defendants do not dispute that they have not certified a sufficient number of IDR entities. They list a number of excuses for why they have not done so (e.g., they must maintain certification standards) and identify

---

the Court declined to consider the argument on the ground that it was raised for the first time in a reply brief. In *Iowaska Church of Healing v. Werfel* (105 F.4th 402, 414 (D.C. Cir. 2024)) the Court of Appeals for the D.C. Circuit declined to consider specific standing arguments that were "referenc[ed] . . . only vaguely in a footnote." Here, the constitutional argument was raised in the main text of Plaintiff's opening brief and cannot be characterized as "vague" as Plaintiff identified the basis for its assertion of a protected property interest with citation to authority, asserted that its due process rights had been violated by Defendants' noncompliance with statutory requirements, and contended it had standing to pursue the claim.

things they must consider in doing so. Defendants then suggest that, because Congress left it to Defendants to assess certain considerations relevant to the program, such as IDR fee ranges, there is no basis for a court to direct the Defendants to certify more entities.

However, the question of whether or not sufficient IDR entities would be certified is not a matter that Congress left within Defendants' discretion. The NSA states that the Departments "*shall* ensure that *a sufficient number* of [IDR] entities are certified." 42 U.S.C. § 300gg-111(c)(4)(A) and (E). The term "shall" in a statute generally denotes a mandatory duty. *Alabama v. Bozeman*, 533 U.S. 146, 153–54 (2001). The language of the NSA not only required Defendants to establish a *process* to certify the IDR entities but also tasked them with the discrete action of ensuring that a sufficient number were certified. The *manner* of ensuring a sufficient number of IDR entities was left to Defendants' discretion but it seems self-evident that the process they have developed is inadequate to the task.

As Plaintiff explained in the main brief, the tradeoff adopted by Congress – the elimination of providers' direct claims against patients in exchange for an arbitral process by which providers could secure payment from health insurance providers – is defeated if, as is the case here, the IDR process does not result in timely recovery of treatment costs incurred by providers. The profound failure to certify anywhere

14

near enough IDR entities as the statute requires has defeated a core objective of the NSA – to facilitate timely adjudication and payment of claims.

Section 706 of the APA provides that a court shall "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), which requires a showing that an agency failed to take a discrete action that it was required to take. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). As stated by the Attorney General's Manual on the APA, which the United States Supreme Court has repeatedly found persuasive (*see e.g. Darby v. Cisneros,* 509 U.S. 137, 148, n. 10 (1993); *Chrysler Corp. v. Brown,* 441 U.S. 281, 302, n. 31 (1979); *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 546 (1978)), a court can "take action upon a matter, without directing how [the agency] shall act," and "mandamus will lie . . . even though the act required involves the exercise of judgment and discretion." Attorney General's Manual on the Administrative Procedure Act 108 (1947).

Plaintiff is not asking the court to interfere with Defendants' discretion to determine what number of IDR entities will be sufficient. Indeed, Plaintiff does not take issue with the ratio that Defendants adopted for that purpose – 1 IDR entity for every 440 claims. It is undisputed that the number of entities certified is grossly insufficient under Defendants' own metric. Plaintiff is requesting only that the Court

direct Defendants to comply with their mandate to ensure a sufficient number of IDR entities in circumstances where they concededly have not done so.

Defendants assert that Plaintiff must point to a number of entities that they were required to certify, or the discrete actions that the Departments were supposed to and did not take to comply with their obligation to ensure a sufficient number of IDR entities were certified (Resp Brf. 20-21). But this is not what the APA requires. As the Supreme Court explained in *Norton*, if, for example, an agency is "compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." 542 U.S. at 65. Here, the statute directs that a sufficient number of IDR entities be certified, leaving it to the agencies to determine what constitutes a sufficient number and how the certification is to be accomplished. Defendants have already determined the number by adopting a ratio. By analogy to *Norton*, a court can direct Defendants to certify a sufficient number of IDR entities (pursuant to their own ratio) by a certain deadline, leaving it to their discretion to determine how to accomplish that result. Accordingly, Plaintiff stated a claim upon which relief may be granted and the District Court erred in dismissing the second amended complaint.

**IV.    The Court Erroneously Held that It Could Not Require Defendants to Provide Clarifying Guidance.**

In their opposition, Defendants downplay the impact their inaccurate guidance relating to the scope of the New York Surprise Bill Law, posted on their public website, had on providers.  This sub regulatory guidance, overstating the scope of the New York law, led (and continues to lead) directly to the dismissal by IDR entities of claims that were eligible for federal IDR adjudication because, despite indicating they would post corrected guidance, they instead quietly removed the mistaken guidance while this action was pending, without notifying IDR entities or others of their change in position.

Defendants' interpretive guidance was a "rule" subject to challenge under the APA insofar as it was "an agency statement of general or particular applicability . . . designed to implement, interpret, or prescribe law or policy," and the harm it caused to providers is redressable by the Court.  5 U.S.C. § 702.  Although Defendants state that the guidance document provided a "high level overview" and rely on a general boilerplate disclaimer that its interpretive guidance does not constitute "legal advice" (Resp Brf. 23), they do not dispute that agency statements of general applicability constitute agency action or that statements that are contrary to law can be challenged under the APA.

Here, after conferring with the New York State Department of Financial Services (which administers the New York no-surprises act), Defendants removed

17

the interpretive guidance from the website, a tacit acknowledgement that it was erroneous. At this juncture, the question distills to whether Defendants' silent removal of the improper guidance – without any statement that the prior guidance was being removed because it was inaccurate and without posting accurate guidance – was sufficient to give Plaintiff complete relief and therefore moot the claim.

Plaintiffs have alleged that, as a result of Defendants' failure to take appropriate action to correct the misunderstanding caused by the improper guidance, IDR entities continue to act consistently with the improper guidance. At this motion to dismiss stage of the proceeding, that allegation must be assumed to be true – Plaintiffs do not have to "support" the allegation as Defendants' suggest, nor have Defendants refuted it. It is Defendants' burden to establish mootness and they have failed to do so because they have not established that the prior mistaken guidance has not caused (and does not continue to cause) injury. Moreover, Defendants have cited no authority for the proposition that, upon a determination that interpretive guidance is contrary to law and that the error has caused injury, a court lacks authority to direct an agency to remove the improper guidance and post a statement that, in some manner, advises stakeholders of the agency's change in position, either in the form of a statement advising that the guidance was removed and should no longer be followed or a statement containing proper interpretive guidance. The issue here is not whether a court may, in the first instance, direct an agency to issue

18

guidance but, rather, whether – upon determining that interpretive guidance is false or misleading and that, despite removal from the website, the defective guidance continues to cause injury – the court has the authority to fashion an appropriate remedy. Plaintiff has stated a claim that has not been mooted by Defendants' removal of the faulty interpretive guidance from the website and should be permitted, upon proof of that claim and injury, to obtain complete relief.

## CONCLUSION

For these reasons, this Court should vacate the District Court's judgment, deny the motion to dismiss, and remand for consideration of Plaintiff's motion for a preliminary injunction.

Dated: April 14, 2025           **HARRIS BEACH**
      Uniondale, New York       **MURTHA CULLINA, PLLC**

            By:    */s/ Roy W. Breitenbach*
                 Roy W. Breitenbach
                 Lisa A. LeCours
                 Megan E. Knepka
                 333 Earle Ovington Boulevard
                 Uniondale, New York 11553
                 (516) 880-8484
                 rbreitenbach@harrisbeachmurtha.com

## CERTIFICATION OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I, Roy W. Breitenbach, certify that the foregoing Appellant's Reply Brief complies with type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and said document contains no more than 4,513 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 14-point "Times New Roman" font.

Dated: April 14, 2025
    Uniondale, New York

**HARRIS BEACH**
**MURTHA CULLINA, PLLC**

By:   */s/ Roy W. Breitenbach*
     Roy W. Breitenbach
     333 Earle Ovington Boulevard
     Uniondale, New York 11553
     (516) 880-8484
     rbreitenbach@harrisbeachmurtha.com